■ DATA RETRIEVAL AND ASSET LOCATING SYSTEMS INC. et al., Respondents, v MEL S. HARRIS AND ASSOCIATES, LLC, et al., Appellants. [784 NYS2d 537]—

Order, Supreme Court, New York County (Edward H. Lehner, J.), entered April 22, 2004, which, in an action to rescind a contract on the ground of fraud, or, in the alternative, to enforce it as an executory accord preserving plaintiffs' original claims for unfair competition against defendants in the event of their nonperformance, as opposed to a superseding compromise accepted in place of plaintiffs' original claims against defendants, inter alia, denied defendants' motion for summary judgment dismissing the complaint, unanimously affirmed, with costs.

It cannot be said as a matter of law that the subject agreement was intended as an immediate substitute for plaintiffs' claims against defendant. "It is often difficult to distinguish between a substitute agreement and an executory accord, the determination of which hinges upon the intent of the parties. 'Generally, it is assumed that one does not surrender an existing obligation for a promise to perform in the future' " (*Board of Mgrs. of Alexandria Condominium v Broadway/72nd Assoc.*, 285 AD2d 422, 424 [2001] [citations omitted]). Insofar as pertinent, the agreement calls for substantial future performance by defendants, including the payment of money and delivery of personal property; it contains general releases of the parties' past claims, "other than for actions arising from the matters set forth herein and contemplated by this agreement"; and calls for the exchange of "supplemental general releases on standard Blumberg forms" to be held in escrow pending defendants' final performance of the agreement. Defendants argue that the agreement was a two-phase settlement. The first, self-executing, released past claims immediately upon execution of the agreement; the second, the supplemental releases, was meant to release new obligations created by the agreement after they had all been performed. This is a reasonable reading of the agreement, but not the only reasonable reading; the supplemental releases may have also been meant as a memorialization of the releases of past claims, to be effective only after performance.

Issues of fact also exist as to whether plaintiffs were fraudulently induced to enter into the agreement. The agreement acknowledges that both sides "have a proprietary interest in differing versions of a [certain] program," and calls for defendants to deliver their version to plaintiffs, including the source code as developed by defendants after plaintiffs went out of business. Plaintiffs contend, and adduce some evidence tending to show, that what was delivered was actually a program developed by one of the defendants while he still worked for plaintiffs. Thus, plaintiffs assert that the program is not different from their own, but is, in fact, their own, stolen from them, and that defendants therefore have no proprietary interest therein. If true, a jury could infer that defendants knowingly uttered a falsehood, i.e., that they possessed a version of the program different from plaintiffs', in order to induce plaintiffs to enter into the agreement.

We have considered defendants' other arguments and find them unavailing. Concur—Mazzarelli, J.P., Ellerin, Lerner, Friedman and Sweeny, JJ.